Ftjld, J.
On this appeal, brought as of right on alleged constitutional grounds, the petitioners seek to annul a decision of the Commissioner of Education sustaining a special election in the Ellicottville Central School District at which the voters authorized the construction of a new high school and the issuance of bonds to finance it.
At the election, held on May 20, 1955, two voting machines were used to record the vote. The machines operate in this way: the voter enters a booth, pulls a handle closing a curtain about him and then selects and depresses a lever indicating his choice. To leave the machine and to record his vote, the voter opens the curtain by drawing back the handle. The act of manipulating the handle back and forth also activates a “ public counter ” which purports to show the total number of voters using the machine.
During the election, it was observed that, although the counters had been set beforehand at zero, they were running ahead of the voters and this fact was noted in the minutes of the meeting. The voting machines were over 25 years old and were equipped with a cord that had to be pulled taut by an attendant to control the operation of the handle that opened and closed the curtain. The custodian of the machines, in an affidavit, stated that the cords were slack and voters sometimes pulled the handle back and forth more than once, tallying twice on the public counter although their vote registered only once. It also appears, from the several affidavits presented, that, in other elections, the number shown on the public counters frequently exceeded the number of registered voters.
In any event, there was no crowding or confusion at the polls. The voting was orderly and the number of voters such that nobody entered the voting booth without first registering his *144 name on a “poll list.” Although both sides of the controversy were represented by “ checkers ” and “inspectors” and although they were present throughout the election, not a single voter was challenged. After the election had been concluded and the polls closed, it appeared that 1,400 votes were actually cast, that there were 1,437 names on the poll list and that the public counters on the machines recorded a total of 1,461. Since, of the 1,400 votes east, 704 were in favor of the proposed school and 696 against, the proposition was carried by 8 votes.
Displeased with the result, the petitioner, Donald O’Brien, appealed, pursuant to section 310 of the Education Law, to the Commissioner of Education for an order voiding and setting aside the election. The principal grounds asserted by the petitioner were, first, that the public counters on the machines indicated a total higher than the total number of names on the poll list and, second, that the School Board had improperly used public funds for propaganda in favor of the proposal.
One member of the seven-member School Board, petitioner William Murphy, filed an answer in which he admitted the allegations of the petition. The other six members of the board joined in an answer which, with affidavits submitted by the chairman and vice-chairman of the meeting, the custodian of voting machines, the clerk of the School District, three inspectors of election and seven checkers, denied that the “ votes recorded on the public counters ’ ’ did or could ‘1 represent any illegal, unknown or unregistered voters. ’ ’
The Commissioner of Education held a hearing at which, though no one was called to testify or give evidence, an opportunity was accorded for full oral argument, the submission and exchange of briefs and the filing of any and all affidavits, exhibits and other materials the parties desired. Following the oral argument and the submission of briefs and other papers, the Commissioner rendered his decision. Finding that “ there is no proof of any irregularity ” in the voting, and that “ The other matters alleged * * * are not sufficient to cause a reversal of the action of the meeting ”, he dismissed the appeal. Some time later, this article 78 proceeding was brought to review that determination.
The Supreme Court upheld the decision of the Commissioner on the ground that it had “ factual basis ” and dismissed the *145 petition. The Appellate Division affirmed; it was that court’s view that the affidavits offered in opposition to those of petitioners “ demonstrated conclusively that there was no triable issue as to the claim that unauthorized persons had been allowed to vote.” Declaring that, “ Even if the excess number on the public counters remained an unexplained mystery, the most that could be inferred was that some voters had opened and closed the curtain more than once; there would still be no basis for an inference that they had voted more than once ”, the Appellate Division concluded with the statement that “ It thus appears that even if the allegations of fact in the petition stood unexplained, there would be no ground to invalidate the election”.
Whether or not that be correct, we are neither called upon nor empowered to decide, for the appeal is not properly before us. Section 588 (subd. 1, par. [a]) of the Civil Practice Act sanctions an appeal to this court as of right only if there is “ directly involved the construction of the [state or federal] constitution”. Quite obviously, and we recently so held in a case very similar to the present one, the Commissioner of Education’s resolution of a dispute on conflicting affidavits without an oral hearing neither directly involves the construction of the constitution nor poses a constitutional question of any kind. (See Matter of Kuhn v. Commissioner of Educ., 2 N Y 2d 749; cf. 4 Benjamin, Administrative Adjudication in the State of New York, p. 183.) Reliance upon Matter of Hecht v. Monaghan (307 N. Y. 461) is thoroughly misplaced. The principle underlying that decision is not applicable to an administrative determination of the sort here involved. The Eecht case, we would but point out, dealt with the revocation of the petitioner’s license to carry on his business or occupation and necessarily affected his very right to make a living.
This is all that need be said. To embark on a discussion of the problems confronting the Commissioner of Education, of the duties imposed upon him and of the reviewability, generally, of his decisions, is entirely beside the point. All that we are now holding is that the appeal taken as of right does not lie.
The appeal should be dismissed.