**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

### No. 12-6679

---

THOMAS MOORE, JR.,

     Petitioner - Appellee,

  v.

MICHAEL A. HARDEE; REUBEN FRANKLIN YOUNG,

     Respondents - Appellants.

---

### No. 12-6727

---

THOMAS MOORE, JR.,

     Petitioner – Appellant,

  v.

MICHAEL A. HARDEE; ALVIN WILLIAM KELLER, JR.,

     Respondents – Appellees.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Fox, Senior District Judge.  (5:11-hc-02148-F)

---

Argued:  May 16, 2013    Decided:  July 22, 2013

---

Before DUNCAN and KEENAN, Circuit Judges, and David C. NORTON, District Judge for the District of South Carolina, sitting by designation.

---

Reversed in part and affirmed in part by published opinion. Judge Duncan wrote the opinion, in which Judge Keenan and Judge Norton joined.

---

**ARGUED:** Clarence Joe DelForge, III, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants/Cross-Appellees. Laura Celeste Grimaldi, NORTH CAROLINA PRISONER LEGAL SERVICES, INC, Raleigh, North Carolina, for Appellee/Cross-Appellant. **ON BRIEF:** Roy Cooper, Attorney General of the State of North Carolina, Raleigh, North Carolina, for Appellants/Cross-Appellees.

---

DUNCAN, Circuit Judge:

A North Carolina jury convicted petitioner-appellee Thomas Moore, Jr. of first-degree burglary and assault with a deadly weapon with intent to kill inflicting serious injury. After Moore exhausted his direct appeals and state post-conviction remedies, he petitioned the district court for a federal writ of habeas corpus under 28 U.S.C. § 2254.

The district court granted the writ. It found that the North Carolina post-conviction court unreasonably applied the Supreme Court's holding in Strickland v. Washington, 466 U.S. 668 (1984), when it rejected Moore's claim that his trial counsel rendered ineffective assistance by failing to present an expert on the fallibility of eyewitness identification, and that the post-conviction court denied Moore relief based on an unreasonable factual determination.

The State of North Carolina, acting through Reuben F. Young, Secretary of the North Carolina Department of Public Safety, and Michael Hardee, Administrator of Hyde Correctional Institution (collectively, "the State"), now seeks reversal of the district court's order granting Moore's writ. Moore cross-appeals from the district court's denial of one of the additional claims of ineffective assistance he asserted below, that his trial counsel was ineffective for stipulating to

3

irrelevant and prejudicial evidence.

Given the deference required by Strickland and the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") to the post-conviction court, we are constrained to disagree with the district court's decision to grant the writ. We therefore reverse the district court's judgment granting Moore's petition on his claim of ineffective assistance based on his counsel's failure to call an expert in eyewitness identification, and affirm the portion of the district court's judgment rejecting Moore's other claims of ineffective assistance.

I.

Although the North Carolina Court of Appeals aptly summarized the facts when it directly reviewed Moore's convictions, we briefly restate them here.

A.

In 2003, Richard and Helen Overton were robbed at gunpoint at home. They accused Moore and his brother, Linwood Moore, of committing the masked, armed robbery. In 2004, the Overtons testified against the Moore brothers in court. The state court dismissed the charges against Thomas Moore; Linwood Moore was acquitted.

On June 7, 2006, Helen and Richard Overton were at their

4

Macclesfield, North Carolina home.  Around 11:00 pm, Helen Overton noticed an African-American male she later identified as Thomas Moore standing outside the storm door; Richard Overton was asleep in another room.  Helen Overton conversed with Moore, who was "[two] feet face to face" with her.  J.A. 492.  Moore asked if he could use her phone because his car had broken down.  When Helen Overton grew suspicious, backed away from the door, and attempted to shut it, he drew a gun and pushed his way inside.  Helen Overton then noticed a second African-American male running toward the house.  She pushed the door shut and attempted to lock it to stop the second person from entering, but Moore began hitting her hands to prevent her from doing so.

When Richard Overton entered the room, "[Moore] started shooting"; Richard Overton suffered gunshot wounds to the shoulder and hand.  J.A. 495.  Moore then pointed the gun at Helen Overton and threatened to kill her, but she pushed him away.  The assailants fled the scene, and Helen Overton contacted emergency services.

When Helen Overton spoke with police on the night of the assault, she did not identify Moore as the shooter.  Instead, she told officers that her husband had told her the intruder "was the same man as last time."  J.A. 554.

Two days later, when officers presented her with a photographic lineup, Helen Overton identified Moore as the

5

shooter. When officers asked Richard Overton who had shot him, he replied, "those damn Moore boys that robbed me three years ago." J.A. 584. Richard Overton indicated that he "saw [Moore's] face." Id. at 585.

Moore was indicted for first-degree burglary and assault with a deadly weapon with intent to kill inflicting serious injury and tried before a jury on April 23, 2007. Richard and Helen Overton identified Moore as the assailant before the jury. Helen Overton confirmed that she had identified Moore from the photographic lineup based on his involvement in the 2006 incident, not because her husband had told her it was "the same man as last time" or because she had seen Moore in court during the 2004 proceedings. The state also presented, without objection from the defense, a .22 caliber revolver that officers performing a separate investigation had recovered several miles from the Overtons' house two weeks after the incident, along with a forensic report analyzing the revolver and the bullets recovered from the Overtons' house. The report was inconclusive with regard to any connection between the admitted firearm and the assault.

Defense counsel cross-examined the Overtons regarding the fact that they had previously accused Moore and his brother of robbery and had seen and testified against the brothers in the earlier case. On cross-examination, Richard Overton

6

acknowledged that on the night of the assault, he had referred to the two assailants as the "Moore boys" even though he himself had only seen one assailant--Thomas Moore. Although Richard Overton characterized his identification as "referring to [Thomas Moore], for one" rather than both "Moore boys," counsel significantly impeached Richard Overton's testimony with evidence that Linwood Moore was incarcerated on the night of the assault and could not have been present. J.A. 524. On cross-examination of the state's crime scene investigator, defense counsel elicited testimony that the revolver recovered several miles from the Overtons' home was connected neither to Moore nor to the incident at the Overtons' home. Finally, Moore testified in his own defense, explaining that on the night of the burglary, he had been at home with his mother. After a three-day trial, the jury convicted Moore of both charges.

Before sentencing, Moore filed a motion for appropriate relief ("MAR")[1] requesting the court to set aside the verdict on sufficiency of the evidence grounds. The court denied the motion and sentenced Moore to seventy-three to ninety-seven months of imprisonment for the assault conviction and sixty-four to eighty-six months of imprisonment for the burglary

---

[1] "A motion for appropriate relief is a post-verdict motion . . . made to correct errors occurring prior to, during, and after a criminal trial" in North Carolina. State v. Handy, 391 S.E.2d 159, 160-61 (N.C. 1990).

7

conviction, to be served consecutively.[2]  Moore appealed.

B.

The North Carolina Court of Appeals affirmed Moore's convictions.  Reviewing Moore's challenge to the admission of the firearm and forensic report for plain error, it found the challenged evidence "irrelevant and prejudicial," but remained unconvinced that "absent the error the jury probably would have reached a different verdict," ultimately concluding that the admission of the evidence did not constitute plain error.  J.A. 214-15.

In 2009, Moore filed a third MAR with the Edgecombe County Superior Court ("the MAR court").  For the first time, he asserted that his trial counsel was ineffective for failing to: (1) move to suppress the Overtons' in- and out-of-court identifications of him; (2) consult with and call an expert in the fallibility of eyewitness testimony; and (3) object to the admission of the firearm and the forensic report.[3]  Moore attached the affidavit of Dr. Lori Van Wallendael, an expert in eyewitness memory.  Her affidavit detailed several factors which can affect the reliability of eyewitness identifications,

---

[2] Moore also filed a second MAR, contesting the credibility of Richard Overton's testimony, which the state court denied.

[3] Moore later amended his third MAR to include an allegation of ineffectiveness based on his trial counsel's failure to cross-examine Richard Overton on the quality of his eyesight.

8

including the "weapon focus effect"[4] and "unconscious transference."[5] Dr. Wallendael also presented evidence about the less reliable nature of cross-racial identifications,[6] as well as the weak correlation between an eyewitness's confidence in his or her identification and the accuracy of that identification. Dr. Wallendael explained that these issues "are not apparent to a 'common sense' appraisal" of eyewitness testimony, and that "the testimony of an expert witness could have assisted the jury in evaluating the reliability of the identifications in this case." J.A. 121-22.

The MAR court denied Moore's third MAR without conducting a hearing. Regarding Moore's claims of ineffectiveness, the MAR court concluded:

> The court finds that evidence as to the out-of-court and in-court identification of the defendant was fully presented to the jury, including evidence that one of the two persons identified by a witness for the state was not present at the time of the commission of the crimes. The jury also heard evidence that at an earlier time the defendant was acquitted of crimes

---

[4] "Weapon focus" occurs "when a weapon is visible during a crime" and "can affect a witness' ability to make a reliable identification and describe what the culprit looks like if the crime is of short duration." United States v. Greene, 704 F.3d 298, 308 (4th Cir. 2013) (citation and internal quotation marks omitted).

[5] "Unconscious transference occurs when a witness confuses a person in one situation with someone seen in a different situation." United States v. Harris, 995 F.2d 532, 535 n.2 (4th Cir. 1997) (citation omitted).

[6] Moore is African-American and the Overtons are white.

allegedly committed against the victims of these offenses. The jury heard all of the evidence surrounding the identification of the defendant and the weight of that evidence was for the jury. The witnesses were examined and cross examined regarding the identifications. The defendant does not suggest that there is any more evidence regarding the identification. The Court concludes any error in failing to request a voir dire on the identification was harmless and not prejudicial; and that there was no showing to justify or require an expert on identification.

The Court finds that claims of ineffective assistance of counsel are without merit; that the defendant has failed to show that counsel's performance fell below an objective standard of reasonableness; that the defendant has failed to[] show that there is a reasonable probability that, but for any alleged errors of trial counsel, there would have been a different result in the trial; that the defendant has failed to overcome the presumption that counsel's failure to request a voir[] dire on identification falls within the range of reasonable professional assistance and sound trial strategy; and that any alleged errors in the failure to request a voir[] dire by defendant's trial counsel and to stipulating to the admission of evidence were harmless beyond a reasonable doubt.

J.A. 153. On August 2, 2011, Moore's request for certiorari was denied.[7]

## C.

Moore filed his federal petition for a writ of habeas corpus in the United States District Court for the Eastern District of North Carolina in August 2011. In it, he argued that the MAR court unreasonably applied clearly established

---

[7] Therefore, the MAR court was the last state court to address Moore's claims of ineffective assistance of counsel.

federal law and based its decision on an unreasonable factual determination, entitling him to the writ under 28 U.S.C. § 2254. Moore made the same ineffective assistance of counsel claims he presented to the MAR court--that his trial counsel provided ineffective assistance by failing to: (1) prepare and call an expert in the fallibility of eyewitness testimony; (2) move to suppress the Overtons' in- and out-of-court identifications; (3) cross-examine Richard Overton on his eyesight; and (4) object to the admission of the firearm and forensic report. The State moved for summary judgment, and Moore filed a cross-motion for the same.

The district court granted Moore's petition after concluding that his counsel rendered ineffective assistance by failing to consult and call an expert on the fallibility of eyewitness testimony. The court first determined that when the MAR court found that Moore "failed to allege the existence of any more evidence concerning the identifications and . . . failed to demonstrate even a justification for such an expert," the MAR court "unreasonably applied the Supreme Court's Strickland decision to the facts" and "based its decision on an unreasonable determination of the facts in light of the evidence presented." Moore v. Keller, ---F.Supp.2d---, No. 5:11-HC-2148-F, 2012 WL 6839929, at *17 (E.D.N.C. March 30, 2012).

To reach this conclusion, the district court primarily

11

relied on two out-of-circuit cases--Ferensic v. Birkett, 501 F.3d 469 (6th Cir. 2007) and Bell v. Miller, 500 F.3d 149 (2d Cir. 2007)--as well as Dr. Wallendael's affidavit. The district court highlighted the expert's utility in light of the "unique facts" of Moore's case. Moore, 2012 WL 6839929, at *11. It concluded that, given that "there were no jury instructions embracing the numerous factors potentially affecting the reliability of the eyewitness identifications, and that there is no other evidence of [Moore's] guilt" besides the Overtons' testimony, expert testimony on the fallibility of eyewitness identifications would have been particularly useful to Moore's defense. Id. Based on Dr. Wallendael's affidavit, the district court found that expert testimony could have exposed the jury to the concepts of the "weapon focus effect" and "unconscious transference," while alerting the jury to problems inherent in cross-racial identifications, as well as the "danger of correlating a witness's supposed confidence in their identification with accuracy." Id. at *13-14.

After determining that "'fair-minded jurists' could not dispute" that the MAR court's judgment represented an unreasonable application of Strickland as well as an unreasonable factual determination, the district court turned to the merits of Moore's ineffective assistance claim. Id. at *17. Recognizing that its decision could "be considered novel," id.

at *18, the court found "counsel's failure to obtain an appropriate expert witness . . . deficient pursuant to Strickland" despite "counsel's cross-examination of the Overtons" and "attempt to establish an alibi," id. at *20. The court reasoned that cross-examination could have been presented in tandem with expert testimony, and that "there was no overarching 'strategy' that required counsel to choose between sponsoring appropriate expert testimony or vigorously cross examining the witnesses and establishing an alibi." Id. at *20. Such testimony would have provided "'a scientific, professional perspective that no one else had offered the jury.'" Id. (quoting Ferensic, 501 F.3d at 477). Because no other evidence connected Moore to the crime (and other admitted evidence was "irrelevant and prejudicial"), the district court found a "reasonable probability . . . [that] the result of the proceeding would have been different" had counsel called an expert in eyewitness fallibility. Id. at *20 (citations omitted).

The court rejected Moore's other claims of ineffective assistance. As relevant to this appeal, the court concluded that even if Moore's counsel was deficient for failing to object to the admission of the "irrelevant and prejudicial" firearm and forensic report, the MAR court did not unreasonably apply Strickland when it concluded that the admission of the evidence

13

did not prejudice Moore.  This was particularly the case because Moore's counsel successfully demonstrated "that none of this evidence could be linked with [Moore] or the crime."  Id. at *25.

The State appealed, and Moore, after receiving a certificate of appealability, cross-appealed the district court's denial of his ineffective assistance of counsel claim based on his counsel's failure to object to the admission of the firearm and forensic report.

II.

We first address the State's contention that the district court erred in granting Moore's writ. We begin our de novo review of the district court's grant of habeas corpus with the AEDPA, which guides our consideration of a state prisoner's habeas corpus petition.  See Richardson v. Branker, 668 F.3d 128, 138 (4th Cir. 2012).  The provisions of the AEDPA "substantially constrain our review of an underlying state court decision." Wolfe v. Johnson, 565 F.3d 140, 159 (4th Cir. 2009).  Under the AEDPA, a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication":

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

14

>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Harrington v. Richter, 131 S. Ct. 770, 783-84 (2011); Richardson, 668 F.3d at 138.

In practice, "[a] decision is an 'unreasonable application' of clearly established federal law if it 'unreasonably applies' a Supreme Court precedent to the facts of the petitioner's claim." Buckner v. Polk, 453 F.3d 195, 198 (4th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). "A similar analysis naturally applies to the analogous and adjacent language in § 2254(d)(2). For a state court's factual determination to be unreasonable under § 2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently against the weight of the evidence that it is objectively unreasonable." Winston v. Kelly, 592 F.3d 535, 554 (4th Cir. 2010) (citation omitted).

The "limited scope of federal review of a state petitioner's claims . . . is grounded in fundamental notions of state sovereignty." Richardson, 668 F.3d at 138 (citing Richter, 131 S. Ct. at 787). Because federal habeas review "frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights," Richter, 131 S. Ct. at 787 (quoting Calderon v. Thompson, 523

15

U.S. 538, 555-56 (1998)), Section 2254(d) is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions," id.

With these background principles in mind, we turn first to the district court's conclusion that, under § 2254(d)(1), the MAR court unreasonably applied the Supreme Court's precedent in Strickland. We then address its finding that the MAR court based its decision on an unreasonable factual determination under § 2254(d)(2). Finally, we turn to Moore's cross-appeal.

A.

1.

Where a habeas corpus petition alleges ineffective assistance of counsel, we review the claim not only through the strictures of the AEDPA but also "through the additional lens of Strickland and its progeny." Richardson, 668 F.3d at 139. The AEDPA and Strickland provide "dual and overlapping" standards which we apply "simultaneously rather than sequentially." Id. (citing Richter, 131 S. Ct. at 788). This "doubly deferential" review requires the court to determine "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S. Ct. at 788.

Strickland sets forth a two-part standard: First, the petitioner must show that "counsel's representation fell below

16

an objective standard of reasonableness." Strickland, 466 U.S. at 688. When determining whether counsel's behavior was deficient, a court "must indulge a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." Id. at 689. Second, the petitioner must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Two recent Supreme Court cases--Richter, 131 S. Ct. 770, and Cullen v. Pinholster, 131 S. Ct. 1388 (2011)--clarify the high bar the AEDPA sets for habeas petitioners. In both cases, the Court emphasized that when state prisoners present ineffective assistance of counsel claims under the AEDPA, the "pivotal question is whether the state court's application of the Strickland standard was unreasonable." Richter, 131 S. Ct. at 785; Pinholster, 131 S. Ct. at 1410-11. Determining whether the state court unreasonably applied Strickland "is different from asking whether defense counsel's performance fell below Strickland's standard," in part because "'an unreasonable application of federal law is different from an incorrect application of federal law.'" Richter, 131 S. Ct. at 785 (quoting Williams, 529 U.S. at 410). Under the AEDPA standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

17

could disagree' on the correctness of the state court's decision." Richter, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). That a petitioner's Strickland claim may have had merit does not alone justify awarding habeas; "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. Id. Under this high bar, a writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] Court's precedents." Id.

2.

The district court held that the MAR court "unreasonably applied" Strickland when it denied Moore's claims of ineffective assistance "despite the considerable amount of evidence proffered to [it] in support of the claim that counsel was ineffective for failing to procure an expert witness . . . ." Moore, 2012 WL 6839929, at *17. We begin our de novo review of the district court's decision "[u]nder the dual, overlapping lenses of AEDPA and Strickland" by asking the following question: "Was the MAR court's holding . . . incorrect to a degree that [its] conclusion 'was so lacking in justification that [it] was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement?'" Richardson, 667 F.3d at 141 (quoting Richter,

18

131 S. Ct. at 786-87). We conclude that there is at least a "reasonable argument that [Moore's] counsel satisfied Strickland's deferential standard," Richter, 131 S. Ct. at 788, and therefore reverse the district court's order granting Moore the writ.

In so holding, we do not contest "the fallibility of eyewitness identifications," Perry v. New Hampshire, 132 S. Ct. 716, 728 (2012), or retrench from our prior recognition of the fact that expert testimony on eyewitness identification may be useful in certain "narrow circumstances," Harris, 995 F.2d at 535. We do note, however, that expert testimony on eyewitness identifications is not automatically admitted; when allowed, its admissibility is generally at the court's discretion, both under federal and North Carolina law. See Perry, 132 S. Ct. at 729 ("In appropriate cases, some States . . . permit defendants to present expert testimony on the hazards of eyewitness identification evidence."); Harris, 995 F.2d at 534; State v. Cotton, 394 S.E.2d 456, 459-60 (N.C. Ct. App. 1990) (quoting State v. Knox, 337 S.E.2d 154, 156 (N.C. Ct. App. 1985)) (permitting the admission of expert testimony on the fallibility of eyewitness identifications at the court's discretion) aff'd 407 S.E.2d 514 (N.C. 1991).

We decline to hold that by failing to call a witness whose testimony the state trial court had full discretion to exclude,

19

Moore's counsel rendered constitutionally deficient performance. In light of the fact that Moore's counsel competently cross-examined both victim-eyewitnesses, showed that one of the Moore brothers could not have been present on the night of the incident, and attempted to establish Moore's alibi, it was not unreasonable for the MAR court to reject Moore's ineffective assistance claims, particularly given the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Even if, "in some cases, counsel would be deemed ineffective for failing to consult or rely on experts," "state courts . . . have wide latitude" to determine when an expert is necessary. Richter, 131 S. Ct at 789. In light of our doubly deferential standard of review, we are reluctant to disturb the state court's conclusion in that regard.

Nor do the out-of-circuit cases upon which the district court relied persuade us otherwise. In Ferensic, a case in which the habeas petitioner's conviction rested entirely on the victim-eyewitness's identification, the state court excluded the defense's expert on eyewitness fallibility as a sanction for failing to comply with a scheduling order. The Sixth Circuit held that "where the record reflects the doubts of the jury itself as to the identification of the perpetrator," 501 F.3d at 484, the petitioner "was denied his Sixth Amendment right to

20

present a defense" by the exclusion of the expert witness, id. at 480. The Sixth Circuit emphasized that "expert testimony on eyewitness identifications . . . is now universally recognized as scientifically valid and of aid to the trier of fact for admissibility purposes" and that "other means of attacking eyewitness identifications do not effectively substitute for expert testimony on their inherent unreliability." Id. at 481-82 (citations and internal quotation marks omitted).

Despite this recognition, the Sixth Circuit preserved the holdings of two unpublished cases in which it held "that the failure of counsel to hire an expert in eyewitness identification did not prejudice the defendant in a criminal trial," noting that "the failure to retain an expert as an initial matter presents a somewhat different problem than the exclusion of an already retained expert." Id. at 483-84. We agree. Finding that the state court unreasonably sanctioned a defendant by excluding prepared expert testimony is far different from requiring counsel to present an expert in eyewitness identification in order to render effective assistance. We find that "it would be well within the bounds of a reasonable judicial determination for the state court to conclude that defense counsel could follow a strategy that did not require the use of experts . . . ." Richter, 131 S. Ct. at 789.

21

We likewise find Bell v. Miller, upon which the district court heavily relied, distinguishable. In Bell, a single victim-eyewitness identified the petitioner after suffering severe trauma, blood loss, and an eleven-day period of heavy sedation. 500 F.3d at 152. The Second Circuit found defense counsel constitutionally ineffective for failing "to consider consulting an expert to ascertain the possible effects of trauma and pharmaceuticals on the memory of the witness" "where the memory of [the eyewitness was] obviously impacted by medical trauma and prolonged impairment of consciousness, and where the all-important identification [was] unaccountably altered after the administration of medical drugs." Id. at 157. Bell is easily distinguishable both on its facts and in the applicable standard of review. In particular, the Second Circuit concluded that Bell's claim had never been decided on the merits in state court, allowing the panel to conduct its Strickland analysis de novo.

In addition to reliance on Bell and Miller, the district court also concluded that no reasonable strategy could explain counsel's failure to call an expert in eyewitness identification. Yet, regardless of how counsel determined the course of Moore's defense, "[r]are are the situations in which 'the wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach."

22

*Richter*, 131 S. Ct. at 789 (quoting *Strickland*, 466 U.S. at 689). While "[o]f course[] we would not regard as tactical a decision by counsel if it made no sense or was unreasonable 'under prevailing professional norms' . . . that is not the case here." *Vinson v. True*, 436 F.3d 412, 419 (4th Cir. 2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521-24 (2003)). Counsel cross-examined both victim-eyewitnesses, attempted to establish an alibi for Moore, and showed that the admitted physical evidence could not be connected to Moore or the assault. The fact that counsel's cross-examination could have been presented along with expert testimony on eyewitness identification must not be analyzed "through the distorting effects of hindsight." *Winston*, 592 F.3d at 544 (citation omitted) (explaining that "[d]efense counsel's strategy of attacking [witness] credibility" through "undeniably focused and aggressive" cross-examination "falls within the wide range of reasonable professional assistance").

Moreover, we decline to deem counsel's classic method of cross-examination ineffective assistance, as "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Because "deficiencies or inconsistencies in an eyewitness's testimony can be brought out with skillful cross-examination," *Harris*, 995 F.2d at 535, we

23

cannot say there is no reasonable argument that counsel's use of cross-examination to challenge the Overtons' credibility constituted ineffective assistance, even considering the unique factual circumstances of Moore's case.

Although the cases cited by Moore and the district court support a conclusion that an expert in eyewitness identification might have provided helpful evidence for the defense, they do not go so far as to foreclose disagreement over whether failure to provide such a witness constitutes ineffective assistance. As holding otherwise contravenes the AEDPA's deferential standard, we reverse the district court's judgment granting Moore's writ.

                                B.

We next address the district court's holding that the MAR court "reached its decision based upon an unreasonable determination of the facts," in light of the evidence presented in the state court proceeding, in violation of § 2254(d)(2). Moore, 2012 WL 6839929, at *21. "[W]e are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "This is a daunting standard--one that will be satisfied in relatively few cases." Taylor v. Maddox, 366 F.3d

24

992, 1000 (9th Cir. 2004). Yet, "deference does not by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). "[W]here the state court has before it, yet apparently ignores, evidence that supports [the] petitioner's claim," the state court fact-finding process is defective. Taylor, 366 F.3d at 1001 (finding an unreasonable factual determination under § 2254(d)(2) where the state court "overlooked or ignored" "highly probative" evidence).

Insofar as the district court found that the MAR court "fail[ed] to consider and weigh relevant evidence that was properly presented to [it]," Taylor, 366 F.3d at 1001, by failing to consider Dr. Wallendael's affidavit, its holding ignores the entirety of the MAR court's order. Immediately after concluding that Moore "d[id] not suggest that there [was] any more evidence regarding the identification"--a determination the district court found unreasonable--the MAR court explained that "there was no showing to justify or require an expert on identification." J.A. 153. While the MAR court's terse treatment of the issue makes review challenging, its pronouncement that an expert was neither justified nor required indicates that it considered Moore's submission and reached a conclusion with which "fairminded jurists could disagree." Richter, 131 S. Ct. at 786. In light of North Carolina's discretion in this regard, see Cotton, 394 S.E.2d at 459, as

25

well as the fact "that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance," Wood v. Allen, 558 U.S. 290, 301 (2010), we find that Moore has failed to meet his burden under § 2254(d)(2).[8]

C.

We now turn to Moore's cross-appeal, in which he contests the district court's rejection of his ineffective assistance of counsel claim based on his trial counsel's failure to object to the admission of the firearm and forensic report.

Pursuant to Strickland, "there is no reason for a court deciding an ineffective assistance claim" to determine "both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; Merzbacher v. Shearin, 706

_____

[8] The State also contends that the district court's judgment would establish a "new rule" of constitutional adjudication, and that Teague v. Lane, 489 U.S. 288 (1989), therefore bars Moore's appeal from federal habeas review. "Under Teague, a state prisoner collaterally attacking his conviction may not rely on a new constitutional rule announced after his conviction became final." Frazer v. South Carolina, 430 F.3d 696, 704 (4th Cir. 2005). Because the district court explicitly applied Strickland to Moore's ineffective assistance claim based on his counsel's failure to call an expert witness, and because "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims," Williams, 529 U.S. at 391, we reject the State's Teague argument. When a case "simply crystalizes the application of Strickland to the specific context" of a petitioner's claim, it does not create a "new rule" of constitutional adjudication. Frazer, 430 F.3d at 704-05.

26

F.3d 356, 365 (4th Cir. 2013). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697. We assume without deciding, as the district court did, that counsel was deficient in failing to object to the admission of the evidence and turn directly to the prejudice prong.

Applying the same "doubly deferential" review discussed above, we ask whether the MAR court's conclusion that Moore's "claims of ineffective assistance of counsel [were] without merit" represented an unreasonable application of Strickland. J.A. 153. Specifically, we ask whether, had Moore's counsel objected to the evidence in question, "fairminded jurists could disagree" as to whether that objection would have created a reasonable probability of affecting the outcome of Moore's trial.

In this regard, we find the reasoning of the North Carolina Court of Appeals and district court persuasive. After finding the challenged evidence "irrelevant and prejudicial," the Court of Appeals declined to find plain error because it could not conclude that "absent the error the jury probably would have reached a different verdict." J.A. 214-15 (citing State v. Walker, 340 S.E.2d 80, 83 (N.C. 1986)). We agree. Even given that the plain error test the Court of Appeals applied--absent

27

the error the jury "probably would have reached a different verdict"--differs from Strickland's test for prejudice--absent counsel's errors, there would be a "reasonable probability" of a different outcome--the MAR court's conclusion does not constitute an "unreasonable" application of Strickland. Counsel successfully demonstrated through cross-examination that the admitted firearm and forensic report were connected neither to Moore nor to the crime against the Overtons. As "reasonable jurists" could disagree as to whether the admission of the evidence ultimately prejudiced Moore, we affirm the district court's denial of the writ on that ground.

## III.

For the foregoing reasons, we reverse the district court's judgment granting Moore's petition on his claim of ineffective assistance based on his counsel's failure to call an expert in eyewitness identification and affirm the district court's denial of Moore's additional claims of ineffective assistance.

REVERSED IN PART AND AFFIRMED IN PART

28