21-1888-cv
*Grant v. Racette*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of December, two thousand twenty-two.

PRESENT:    JOSÉ A. CABRANES,
            ROSEMARY S. POOLER,
            WILLIAM J. NARDINI,
                    *Circuit Judges.*

---

EDWIN GRANT,

                *Petitioner-Appellant,*                          21-1888-cv

        v.

STEVEN RACETTE, SUPERINTENDENT,
CLINTON CORRECTIONAL FACILITY,

                *Respondent-Appellee.*

---

**FOR PETITIONER-APPELLANT:**          Edwin Grant, pro se, Stormville, NY.

**FOR RESPONDENT-APPELLEE:**           Leonard Joblove, Jason Eldridge,
                                       Assistant District Attorneys, of counsel,
                                       for Eric Gonzalez, District Attorney
                                       Kings County, Brooklyn, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Dora L. Irizarry, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiff-Appellant Edwin Grant, proceeding pro se, appeals the District Court's judgment denying his 28 U.S.C. § 2254 petition against Respondent-Appellee Steven Racette, the superintendent of New York's Clinton Correctional Facility (the "State"). Grant was convicted of, among other things, attempted murder for shooting the owner of a construction company while attempting to rob him. In his § 2254 petition, Grant argued that an eyewitness to the shooting impermissibly identified Grant at trial as the gunman. Previously, we granted a certificate of appealability as to whether the admission of the witness's in-court identification was so unreliable as to violate due process. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

In evaluating the District Court's denial of § 2254 relief, we review findings of fact for clear error and conclusions of law de novo. *Saunders v. Senkowski*, 587 F.3d 543, 547 (2d Cir. 2009) (per curiam). Because in this instance, the New York Appellate Division denied the identification claim on the merits, its ruling is entitled to Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") deference by federal courts. Accordingly, "a federal court can grant habeas only if the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Bell v. Miller*, 500 F.3d 149, 154-55 (2d Cir. 2007) (quoting 28 U.S.C. § 2254(d)).

On appeal, the State argues that the Appellate Division did not unreasonably apply clearly established federal law because no Supreme Court holding addressees an identification that occurred only in court. *See Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). This is contrary to the State's position in the District Court, where it agreed with Grant that the clearly established federal law governing his claim was *Manson v. Brathwaite*, 432 U.S. 98 (1977) and *Neil v. Biggers*, 409 U.S. 188 (1972).

Because we may "affirm on any ground with support in the record," *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014), "including grounds upon which the district court did not rely," *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993), we need not determine whether the admission of the identification violated clearly established federal law. Even assuming that the state court did unreasonably apply federal law in ruling that the in-court identification was admissible, the error was harmless. *See Brown v. Davenport*, 142 S. Ct. 1510, 1517 (2022) ("[A] federal court cannot grant relief without first applying both the [harmless error] test this Court outlined in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)] and the one Congress prescribed in AEDPA [that the state court's application was unreasonable].").

2

When determining the harmlessness of an alleged error, we consider "the importance of the witness's wrongly admitted testimony, and the overall strength of the prosecution's case." *Raheem v. Kelly*, 257 F.3d 122, 142 (2d Cir. 2001) (quoting *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000)). To evaluate "importance," we assess "whether the testimony bore on an issue that was critical to the jury's decision; whether it was material to the establishment of the critical fact or whether it was instead corroborated and cumulative; and whether the wrongly admitted evidence was emphasized in arguments to the jury." *Young v. Conway*, 698 F.3d 69, 87 (2d Cir. 2012). Among these factors, "the strength of the prosecution's case 'is probably the single most critical factor in determining whether error was harmless.'" *Wray*, 202 F.3d at 526 (quoting *Latine v. Mann*, 25 F.3d 1162, 1167–68 (2d Cir. 1994)).

First, and most critically, the testimony here was not "crucial to the prosecution's case." *Raheem*, 257 F.3d at 142. While Grant's identity as the shooter was a central issue at trial, the witness merely testified that Grant "look[ed] like" the shooter, and the prosecutor did not rely on his testimony at summation. In fact, the prosecutor reiterated that this witness failed to identify Grant at a pre-trial line-up to rebut Grant's claim that he was being framed. *See Young*, 698 F.3d at 87.

Second, the witness's testimony was cumulative of another eyewitness's much more definitive testimony that Grant was the shooter. That witness—an off-duty police officer who saw the shooting—identified Grant shortly after the shooting, after viewing him from across the street for ten to fifteen minutes in the daylight, and testified that he had "no doubt" that Grant was one of the robbers. App'x 106; *see Wray*, 202 F.3d at 526 ("[W]here the wrongly admitted evidence was cumulative of other properly admitted evidence, it is less likely to have injuriously influenced the jury's verdict.").

Last, the State presented significant evidence linking Grant to the crime. He went to a hospital to be treated for a gunshot wound shortly after the shooting; his blood was found in his mother's burgundy Maxima with Florida plates; another witness testified that the robbers fled in a "burgundy car with Florida plates"; and a police officer testified that he found a .45 caliber shell casing in Grant's pants pocket.

Grant raises new arguments in his appellate brief, asserting a witness committed perjury and a hospital show-up was unreliable. We ordinarily do not consider issues raised for the first time on appeal, and Grant presents no reason to do so here. *See Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994).

Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
